

# IN THE
# TENTH COURT OF APPEALS

No. 10-07-00260-CR, No. 10-07-00261-CR,
No. 10-07-00262-CR, No. 10-07-00263-CR,
No. 10-07-00264-CR, No. 10-07-00265-CR,
No. 10-07-00266-CR, No. 10-07-00267-CR,
No. 10-07-00268-CR, No. 10-07-00269-CR,
And No. 10-07-00270-CR

**KARL KEITH NOLAND,**

                                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                        **Appellee**

From the 85th District Court
Brazos County, Texas
Trial Court Nos. 05-04140-CRF-85, 05-04141-CRF-85,
05-04142-CRF-85, 05-04143-CRF-85, 05-04144-CRF-85,
05-04145-CRF-85, 05-04146-CRF-85, 05-04147-CRF-85,
05-04148-CRF-85, 05-04149-CRF-85, and 05-04150-CRF-85

## MEMORANDUM OPINION

Karl Keith Noland was convicted of 50 separate counts spanning 11 indictments of Possession of Child Pornography. TEX. PENAL CODE ANN. § 43.26 (Vernon 2003). He was sentenced to 10 years in prison on each count. Because probable cause existed to issue the search warrant and because there was not a material disputed fact issue to

require an article 38.23 instruction to the jury, we affirm the trial court's judgment.

## BACKGROUND

Noland was having trouble with his home computer. It would not "boot up." He called Lloyd McSpadon, owner of Brazos Valley Computers. McSpadon told him to bring the computer in to the shop. Noland then asked an unusual question. He asked what McSpadon would do if he found something on Noland's computer that was not supposed to be there. McSpadon interpreted that question to mean that Noland had pornography on his computer. McSpadon told Noland that pornography was not illegal. Noland responded, "Mine is," or words to that effect. McSpadon then said to Noland, "Well, let's say I won't look for it." Noland also asked McSpadon if he would be going through the computer looking at things stored on it. McSpadon replied that he would not.

Noland brought in the computer. He did not give McSpadon any special instructions about where McSpadon could or could not look on the computer. Although Noland did not specifically authorize McSpadon to run a virus check, Noland did not give any limitations on fixing the computer. When McSpadon began working on the computer, he noticed that several capacitors on the motherboard had exploded and had blown the motherboard. Later, McSpadon tested each component of the computer, such as the CD drive and the hard drive, because a blown motherboard can affect other components of the system. Before replacing the motherboard, he started a virus scan on the hard drive. McSpadon testified that he believed this action was necessary to avoid problems while trying to repair the computer. On cross-

examination, McSpadon agreed that a virus scan had nothing to do with the motherboard but noted that it had everything to do with fixing the computer. And although he does not run a virus scan with every customer, he runs a scan with most customers.

During the virus scan on the hard drive, McSpadon came across something that was alarming to him. There were some virus-infected files in a particular folder. He could see the names of the files as they were being scanned. One of the file names was "Five-year-old girl with dog or pedo." McSpadon aborted the virus scan and went to that particular folder to confirm what he saw. He opened the folder, but not the particular files, and saw thumbnails of what was in the folder. He could see that the folder contained what he thought to be pornographic images. McSpadon recalled that Noland had said his pornography was illegal.

At that point, McSpadon shut down his server, took the hard drive out, and installed it back into Noland's computer. He then called the FBI. McSpadon was later contacted by Det. Brandy Norris from the College Station Police Department. She came over to the computer store with a search warrant and took the computer. Child pornography was discovered on Noland's computer hard drive.

### SEARCH WARRANT

In his first issue, Noland argues that the trial court erred in overruling his motion to suppress evidence of alleged pornographic images of children extracted from his computer hard drive secured pursuant to a search warrant.

Prior to trial, Noland filed three "boilerplate" motions to suppress. One

requested suppression of statements he may have made. Another requested the suppression of evidence seized during a *warrantless* search of his residence, land, or business. The third, and the subject of this appeal, requested the suppression of personal property seized *without a warrant*.[1]

At the start of the trial, Noland offered to have the court "carry" the motions throughout the trial, suggesting that he would like to be heard on the motions at some point after some witnesses testified. After Norris testified, Noland requested to be heard on his motion to suppress personal property which had, by then, morphed into an oral motion to suppress the computer seized pursuant to the search warrant. It is difficult to determine from the record exactly why Noland thought there was a problem with the search pursuant to the warrant. Nevertheless, by the end of the argument by the parties, the issue again morphed into a different question: was there probable cause to support the issuance of the search warrant.[2] The trial court found that Noland's volunteered statement that the pornography on his computer was illegal was sufficient to support a warrant.

Now on appeal, the complaint appears to have morphed again. Noland gives four reasons in support of his issue that the trial court erred in denying his motion to suppress. First, he contends that our review is limited to the four corners of the affidavit in support of the search warrant. Second, he contends he has standing to

---

[1] Both the search of the computer and the search of Noland's residence were conducted *with* a warrant, not without a warrant.

[2] By the time of the trial court's decision on the motion to suppress, the search warrant had been introduced into evidence. However, the affidavit supporting the warrant had not yet been admitted.

assert an article 38.23 violation.[3]  Third, he contends an article 38.23 violation was contained in the affidavit in support of the search warrant.  Fourth, he contends we cannot consider his statement concerning the illegal pornography on his computer.

*APPLICABLE LAW*

The Fourth Amendment prohibits unreasonable searches and seizures.  *Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002) (citing U.S. CONST. AMEND. IV; *Minnesota v. Carter*, 525 U.S. 83, 88, 142 L. Ed. 2d 373, 119 S. Ct. 469 (1998)).  But searches conducted pursuant to a warrant "will rarely require any deep inquiry into reasonableness."  *Id*. (quoting *United States v. Leon*, 468 U.S. 897, 922, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984)).  There is a strong preference for searches conducted with a warrant because they are issued based on "the informed and deliberate determinations" of a neutral and detached magistrate.  *Id*. (quoting *United States v. Ventresca*, 380 U.S. 102, 105-106, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *Aguilar v. Texas*, 378 U.S. 108, 110-11, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964)).

Probable cause to issue a search warrant exists when, under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a crime will be found at the specified location.  *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007).  The inquiry for reviewing courts, including the trial court, is whether there are sufficient facts, coupled with reasonable inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. *Id*. at 62.  "We must defer to the magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for his conclusion." *Id*. at 64.

---

[3] TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005).

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to facts not turning on credibility and demeanor. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

*APPLICATION*

On appeal, two arguments Noland makes to support his issue are that he has standing to assert an article 38.23 violation and that an article 38.23 violation was contained in the affidavit in support of the search warrant. Noland contends on appeal that he had a legitimate expectation of privacy in his computer hard drive. But this was not an argument that was expressly made to the trial court. At the hearing on the motion to suppress, Noland only alluded to the concept of an expectation of privacy by discussing a case in which the expectation of privacy in a computer was central to the holding of the court. *See United States v. Barth*, 26 F. Supp. 2d 929 (W.D. Tex. 1998, order). Noland discussed the *Barth* case and two cases distinguishing it and then concluded that the search was illegal and the evidence should be suppressed as fruit of the poisonous tree. Further, Noland never pointed out to the trial court that he viewed McSpadon's actions as a violation of the law. Accordingly, the arguments made at trial were not sufficiently specific to preserve for our review the arguments Noland makes now on appeal. *See* TEX. R. APP. P. 33.1; *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) ("Appellant's global statements in his pretrial motion to suppress were not sufficiently specific to preserve the arguments he now makes on appeal.").

Noland also argues on appeal that we cannot review the testimony presented prior to the argument on the motion to suppress because we are limited to the "four corners" of the affidavit. At the hearing on the motion to suppress, Noland specifically asked the trial court to consider the testimony of the witnesses who had just testified. Regardless of whether Noland's request at trial amounted to invited error, a question we do not decide, we note that the testimony presented encompassed the same information that was included in the search warrant affidavit which, although it was not at that time in evidence, was ultimately introduced at the end of the presentation of testimony when Noland was requesting a specific jury instruction which will be discussed in connection with Noland's second issue. And because Noland's volunteered admission to McSpadon that the pornography on his computer was illegal was included within the search warrant affidavit, there are sufficient facts, coupled with reasonable inferences from those facts, to establish a "fair probability" that evidence of a particular crime would likely be found on the computer hard drive.

But Noland also argues that we cannot consider his "lay opinion" about the illegality of the pornography. He cites no authority for that proposition. That argument is inadequately briefed and presents nothing for review. *See* TEX. R. APP. P. 38.8 (h). Accordingly, probable cause existed to issue the search warrant.

Because probable cause existed to issue the search warrant, the trial court did not err in overruling Noland's motion to suppress. Noland's first issue is overruled.

## JURY INSTRUCTION

By his second issue, Noland argues that the trial court erred in failing to submit a

requested article 38.23 instruction to the jury. He contends there was a disputed fact issue on the scope of authority given to McSpadon.

A defendant's right to the submission of jury instructions under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-510 (Tex. Crim. App. 2007). There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction under article 38.23(a):

> (1) The evidence heard by the jury must raise an issue of fact;
>
> (2) The evidence on that fact must be affirmatively contested; and
>
> (3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Id*. at 510.

The only question is whether under the facts of a particular case an issue has been raised by the evidence so as to require a jury instruction. *Id*. (quoting *Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982)). There must be a genuine dispute about a material fact. *Id*. at 510. If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. *Id*. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id*. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct. *Id*. at 511. Where no issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury. *Id*.

at 510 (quoting *Murphy*, 640 S.W.2d at 299).

The fact issue that Noland claims, on appeal, was disputed was whether McSpadon's ability to look through the files of Noland's computer was limited by Noland. Even if this was a disputed fact issue, which we do not determine, this fact is not material to the ultimate admissibility of the evidence because there was another fact not in dispute which was sufficient to support the lawfulness of the search. That fact is Noland's voluntary admission that the pornography on his computer was illegal. No other testimony disputed this admission. Therefore, the trial court did not err in refusing the requested jury charge.

Noland's second issue is overruled.

## CONCLUSION

Having overruled Noland's issues on appeal, we affirm the trial court's judgment.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Justice Davis
Affirmed
Opinion delivered and filed June 24, 2009
Do not publish
[CR25]